**In re the COMMITMENT OF Stephen ROBERTS.**

**No. 02A03–9902–CV–60.**

Court of Appeals of Indiana.

Feb. 8, 2000.

Thomas C. Allen, Fort Wayne, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Counsel for Amicus Curiae, Department of Mental Health.

**OPINION**

BAKER, Judge

Appellant-respondent Stephen Roberts appeals his involuntary commitment to a mental health facility. Specifically, he

claims that he was denied due process, as guaranteed by the Constitution of the United States and the Indiana Constitution, when the trial court called witnesses provided by the appellee-petitioner and questioned those witnesses.

## FACTS

Roberts came to the attention of Park Center, the mental health facility where he was temporarily committed, when he was brought in by police and the Secret Service after allegedly making threats against the President of the United States. Petitioner Rita Wynn, heard Roberts make several threatening statements. Furthermore, a Fort Wayne police explosives expert testified that Roberts had apparently stolen a grenade from an army recruiting site. Roberts appeared at the recruiting station in military-style dress and told the police that he was on a special mission to free prisoners in Russia. Roberts threatened law enforcement officers after being taken into custody.

The psychiatrist who treated Roberts at Park Center testified that he is afflicted with unipolar manic illness. Roberts was prescribed anti-psychotic medication to relieve his "delusional thought process." Record at 39. The psychiatrist testified that Roberts is mentally ill within the meaning of Indiana's statute and that he is dangerous to others. He testified further that Roberts is gravely disabled within the meaning of Indiana's statute.

The Division of Mental Health submitted to the Court, as an attachment to its April 8, 1999 pleading, an order of the Allen Superior Court terminating Roberts' commitment. The Division noted at that time that the case might be mooted because the commitment has been terminated.

On January 8, 1999, Wynn, a social worker, filed a petition requesting the involuntary mental health commitment of Roberts. A hearing was held on January 13, 1999, at which Roberts was represented by Thomas C. Allen, and Wynn was not represented by counsel. At the hearing the trial judge questioned witnesses regarding the need for a mental health commitment. Roberts' attorney had the opportunity to cross-examine all witnesses, and did cross-examine almost every one. Roberts' attorney also made objections and moved to strike the court's examination multiple times. He also made a closing argument.

At the conclusion of the hearing, the trial court issued an Order of Regular Commitment in which it found that Roberts was suffering from mental illness and that he was a danger to others. Roberts now appeals.

## DISCUSSION AND DECISION

Roberts argues that the trial court violated his due process rights when it questioned the witnesses at the commitment hearing in the absence of an attorney for Wynn. Specifically, he maintains that the trial court cannot appear impartial when it is "eliciting all of the testimony and calling all the witnesses." Appellant's brief at 9.

This issue was addressed in a similar case, *Jones v. State*, 477 N.E.2d 353, 356 (Ind.Ct.App.1985), *trans. denied*. In *Jones*, the trial court conducted the examination of the petitioner, a psychiatrist, who demonstrated that Jones met the standard for civil commitment. *Id.* at 355–56. In reviewing the case, we wrote: "Judicial bias cannot be assumed merely because the trial court participated in the examination of [the petitioner]." *Id.* at 359. We also noted that, "the trial court's power to examine witnesses is implicit in civil commitment proceedings because of the trial court's duty to determine if the allegedly mentally ill person is either gravely disabled or dangerous." *Id.* Furthermore, the trial court's conduct is not generally prohibited. Evid. Rule 614(B) provides that "[t]he Court may interrogate witnesses, whether called by itself or by a party."

In this instance, Roberts points to no particular conduct of the trial judge as evidence of bias, but rather objects to the judge's participation as a general matter. Roberts first states that the trial judge called all the witnesses. However, the witnesses were provided by petitioner Wynn. R. at 22, 36, 55, 75, 93. Thus, the trial judge's mere calling of those witnesses to the witness stand does not place him in an adversarial role.

Roberts also states that the trial judge questioned the witnesses. While it is true that a violation of due process occurs where a trial judge combines the roles of judge and advocate, we do not see evidence that the trial judge did so here. In general, most restrictions on the court's power to examine witnesses are relaxed in trials to the court. *Id.* Furthermore, the General Assembly demonstrated a desire to permit the public to avail itself of civil commitment proceedings in the relevant statutes. For example, IND.CODE § 12–26–2–5 provides for corporations which petition for commitment to be represented by non-attorneys.[1] The General Assembly also charged the trial judge with protection of the respondent's rights in civil commitment proceedings. *See e.g.,* I.C. § 12–26–2 (detailing rights of persons subject to commitment).

We note that the purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake. The trial judge in this context is given latitude to ensure that the statutory criteria for commitment are met and that the rights of the person facing commitment are fully protected. *See id.* at 360. In this case, Roberts has not demonstrated any viola-

tion of due process. Thus, we conclude that the trial court did not err in calling to the witness stand witnesses provided by the petitioner, nor did it err by questioning witnesses in the absence of an attorney for the petitioner.

Judgment affirmed.

SULLIVAN, J., and STATON, J., concur.

---

1. We are not called upon here to decide the efficacy of the General Assembly's position. The Indiana State Constitution provides that "The General Assembly shall not pass local or special laws ... regulating the practice in courts of justice." Art. IV, § 22. Furthermore, our constitution grants to our supreme court original jurisdiction to determine the qualifications for admissions to and practice of law. Art. VII, § 4. Furthermore, our supreme court has ruled that, where statutes passed by the General Assembly are in conflict with supreme court rules governing the practice of law, the rules shall prevail. *State ex rel Western Parks, Inc. v. Bartholomew County Court,* 270 Ind. 41, 43, 383 N.E.2d 290, 292 (1978).